

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

ALANA TOMMERAASEN,

    Plaintiff,

vs.

PREMIER BANKCARD, LLC, successor in interest to PREMIER BANKCARD, INC.,

    Defendant.

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

CIV. 10-4061

COMPLAINT

Plaintiff, Alana Tommeraasen, for her complaint against Premier Bankcard, LLC, as successor in interest to Premier Bankcard, Inc., states:

### Jurisdiction

1. Jurisdiction is conferred upon this Court pursuant to the Americans with Disabilities Act of 1990 as amended ("ADA"), 42 U.S.C. § 12101, et seq.

2. This Court has supplemental jurisdiction over Plaintiff's state law claim, pursuant to 28 U.S.C. § 1367.

### Venue

3. Venue is proper in the United States District court for the Southern District of south Dakota because all of the unlawful employment practices alleged were committed within this jurisdiction..

Case No. 10-
Complaint
Page 2

## Parties

4. Plaintiff, Alana Tommeraasen, resides in Baltic, South Dakota.

5. Defendant, Premier Bankcard, LLC, is a Limited Liability Company located in Sioux Falls, South Dakota.

6. On January 19, 2007, South Dakota the Secretary of State issued a Certificate of Conversation converting Premier Bankcard, Inc., a South Dakota Business Corporation, to Premier Bankcard, LLC, a South Dakota Limited Liability Company.

7. Pursuant to SDCL § 47-1A-955(2), the liability of the converting entity remain the liabilities of the surviving entity.

8. The acts of which Plaintiff complains, constituting a pattern of discrimination, occurred both prior and subsequent to the date of the conversion.

9. Defendant Premier Bankcard LLC is an employer within the meaning of the Americans with Disabilities Act.

10. Plaintiff is an eligible employee within the meaning of the Americans with Disabilities Act 42 U.S.C. § 12101.

## Administrative Procedure

11. On May 17, 2008, Plaintiff filed an Intake Questionnaire setting forth a charge of discrimination with the EEOC.

Case No. 10-
Complaint
Page 3

12. On May 21, 2008, Plaintiff was informed by the EEOC that her questionnaire was being forwarded to the South Dakota Department of Labor for processing as the Defendant was within their geographical jurisdiction.

13. On or about May 29, 2008, the South Dakota Department of Labor transferred Plaintiff's charge to the EEOC because more than one hundred and eighty days had passed since the discrimination, divesting South Dakota's jurisdiction, forwarded a completed Charge of Discrimination, asked Plaintiff to sign and return it so that the charge could be transferred to the EEOC.

14. On June 18, 2008, Plaintiff signed and returned the Charge of Discrimination, which was received by the South Dakota Department of Human Rights on June 19, 2008, and presented to the EEOC.

15. On March 2, 2010, Plaintiff was issued a Notice of Right to Sue, advising that she had 90 days within which to file this action.

### Statement of Facts

16. Plaintiff is a person with physical disabilities.

17. On October 3, 2005, Plaintiff gave her supervisor, Jen Patrick, a doctor's request for an ergonomics evaluation of Plaintiff's workstation.

18. At the request of Linda Bell, a workstation evaluation was performed on Plaintiff's workstation by Terry Dell, who recommended the use of a mouse wrist rest to

minimize extension while mousing; a keyboard gel filled wrist rest; and micro-breaks with exercises throughout the work day.

19. A mouse wrist rest and keyboard gel filled wrist rest were ordered by Defendant, however, the rests did not fit in the keyboard tray at Plaintiff's workstation.

20. Directing Officer, Scott Doetzel, refused to order a new tray for Plaintiff's workstation, citing costs as the reason.

21. After being reprimanded for stretching, Plaintiff believed that if she were to take the recommended micro-breaks and perform the exercises she would be terminated from her position.

22. Plaintiff's fear of losing her job adversely affected her health.

23. Without the accommodations, Plaintiff's disability continued to cause her severe pain resulting in decreased productivity.

24. In May of 2006, Plaintiff tried to explain her disability to her new supervisor, Tera Lembcke, but no action was taken.

25. On or about April 17, 2007, Plaintiff noticed another co-worker had received a new keyboard tray, one that could accommodate the rests ordered for Plaintiff. The co-worker explained that she had received the tray because of her doctor's request.

26. Upon learning that Defendant had supplied a co-worker with a new tray, Plaintiff spoke with Anna Harty, a fill-in supervisor, who told Plaintiff that she would

contact Human Resources to inquire about ordering and installing a new tray for Plaintiff.

27. The new tray arrived on or about May 3, 2007, but was not installed until May 21, 2007.

28. As a result of the almost two-and-one-half years of delay in accommodating Plaintiff, her disability caused her increasingly more pain.

29. On November 20, 2007, Plaintiff was terminated from her position for lack of productivity.

## Count One
## Violation of the Americans with Disabilities Act

30. Plaintiff incorporates by reference all the preceding paragraphs.

31. Defendant has a duty to accommodate disabled employees.

32. Plaintiff informed Defendant of her disabilities, but Defendant failed to timely accommodate any request made by her for such accommodations.

33. As a result of Defendant's failure to timely provide the requested accommodations, Plaintiff's disabilities increased, an rendered it increasingly difficult to perform work duties.

34. Defendant ultimately discharged Plaintiff as a result of her increasing disability, which was a direct result of Plaintiff's failure to timely accommodate Plaintiff, resulting in compensatory damages.

35. Defendant's discriminatory actions were in violation the Americans with Disability Act of 42 U.S.C. § 12112.

## Wrongful Discharge

36. Plaintiff incorporates by reference all of the preceding paragraphs.

37. Defendant was aware of Plaintiff's disability but failed to adequately make accommodations, causing Plaintiff's disability to increase.

38. As Plaintiff's disability increased, her productivity decreased and Defendant subsequently fired her.

39. Defendant's actions violate SDCL § 20-10-13, resulting in Plaintiff's wrongful discharge.

WHEREFORE, the Plaintiff prays for the following:

1. That the Court entered judgment that the Defendant's acts, practices and procedures complained of violated Plaintiff's right to be free of disability discrimination under the ADA;

2. That the Court provide Injunctive relief requiring the institution of policies and procedures to protect employees from discrimination;

3. That the Court award Plaintiff compensatory damages resulting from her loss of pay and lost fringe benefits, and other appropriate relief to address the discriminatory practices herein;

4. That the Court award Plaintiff her costs, attorney fees, and disbursements; and

5. That the Court grant such further and additional relief as it deems appropriate.

Dated this 28th day of May, 2010.

*Alana Tommeraasen*
Alana Tommeraasen
415 Johnson Ave.
P. O. Box 179
Baltic, SD 57003-0179
605-529-5584

**Demand for Jury Trial**

Plaintiff demands trial by jury on all triable issues of fact.